IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JACQUETTA NACOSTE-HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 3:14-CV-01594-JO |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, Acting Commissioner of ) | OPINION AND ORDER |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

JONES, J.,

Plaintiff Jacquatta Nacoste-Harris ("Nacoste-Harris") appeals the Commissioner's decision to deny her application for supplemental security income under Title XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

**PRIOR PROCEEDINGS**

Nacoste-Harris applied for supplemental security income alleging disability beginning in April 2008 due to an intestinal infection, weight loss, migraines, and hemorrhoids. Admin. R. 236, 257. The Administrative Law Judge ("ALJ") applied the sequential disability determination process described in 20 C.F.R. § 416.920. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). He found Nacoste-Harris's ability to work limited by migraine headaches and a history of cocaine dependence, but ultimately concluded she was not disabled. Admin. R. 122-131.

1 - OPINION AND ORDER

Nacoste-Harris then submitted new evidence to the Appeals Council, which vacated the ALJ's decision and remanded the case with instructions to consider the new evidence, take any further action needed to complete the administrative record, and issue a new decision. Admin. R. 138-140.

After remand, the ALJ found that Nacoste-Harris's ability to work was adversely affected by migraine headaches, a history of cocaine dependence, and myofascial pain syndrome. Admin. R. 16. The ALJ found that, despite these impairments, Nacoste-Harris retained the residual functional capacity ("RFC") to perform a range of light work, with limitations on climbing, overhead work, and environmental exposure to noises, fumes, gases, and hazards. Admin. R. 18.

The vocational expert ("VE") testified that a person with Nacoste-Harris's RFC could perform the activities and functions required in light, unskilled occupations such as cashier, small products assembly, and retail marker, which represent hundreds of thousands of jobs in the national economy. Admin. R. 24, 94-95. As a result, the ALJ found that Nacoste-Harris was not disabled. Admin. R. 24.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I. Claims of Error

Nacoste-Harris contends the ALJ improperly assessed the severity of her impairments at step two of the decision-making process, discounted the credibility of her subjective statements, gave insufficient weight to the medical opinions of Drs. Moreno and Ogisu, discounted the lay witness statements, and failed to accommodate all of the limitations arising from her migraines and myofascial pain syndrome in the residual functional capacity assessment.

### II. The Step Two Severity Requirement

Nacoste-Harris contends the ALJ erred by finding that her abdominal pain was not a severe impairment for the purposes of step two of the decision-making process. The purpose of step two is to eliminate frivolous cases in which the claimant fails to allege any impairment that has a significant adverse impact on the ability to work. At step two, the ALJ must determine whether any combination of impairments has more than a *de minimis* impact on the claimant's ability to do basic work activities. Here, the ALJ resolved that question in favor of Nacoste-Harris. Accordingly, Nacoste-Harris has not identified any harmful error at step two. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error in omitting an impairment from the list of severe impairments at step two was harmless because step two was resolved in claimant's favor); *Lewis v. Astrue*, 498 F.3d 909 (9th Cir. 2007) (failure to list impairment as severe at step two was harmless because the limitations posed by the impairment were considered at step four).

Additionally, the ALJ considered all the evidence of functional limitations from Nacoste-Harris's abdominal pain, nausea, and vomiting, as discussed more fully in the following sections of this opinion. He concluded that the evidence did not show that these symptoms significantly limited

her ability to do basic work activities. Admin. R. 16. For an impairment to be found severe, the impairment must significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). Because Nacoste-Harris failed to produce credible evidence that her abdominal pain, nausea and vomiting significantly limited her ability to do basic work activities, the ALJ did not err by finding those impairments not severe.

### III. Credibility Determination

In her application materials, Nacoste-Harris alleged that she could not work because an intestinal infection, migraines, and hemorrhoids left her "unable to function." She alleged her condition caused vomiting for three days straight two to three times per month resulting in weight loss. Admin. R. 18, 257. At her first administrative hearing in 2011, Nacoste-Harris alleged additional symptoms, including chronic pain in the neck, hips, right arm, and right shoulder, tingling in her right foot, cramps in the low back, weakness in the legs, vomiting, and depression. Admin. R. 18, 75. In addition, Nacoste-Harris said she suffered medication side effects including double vision, episodes of dizziness, and loss of balance. Admin. R. 19, 79. At her second administrative hearing in 2013, Nacoste-Harris alleged she had fibromyalgia, arthritis in her neck, and muscle spasms. Admin. R. 48. She said she could sit in a chair or stand for about seven minutes, walk a half a block, and lift no more than a gallon of milk. Admin. R. 19, 53-54.

The ALJ believed that Nacoste-Harris suffered from impairments, namely migraine headaches and myofascial pain syndrome, which limited her to a range of light work with the restrictions itemized in her RFC assessment. He found Nacoste-Harris less than fully credible, however, regarding her claims that she had additional limitations exceeding those in her RFC assessment. Admin. R. 19. Thus, he discredited her claims that she would be unable to sit, stand,

walk, and lift sufficiently to meet the requirements of light work and that she would be unable to engage in any work meeting the restrictions outlined in the RFC assessment.

An adverse credibility determination must include specific findings supported by substantial evidence and clear and convincing reasons. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d at 1039. In assessing credibility, the ALJ must consider all evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F.3d at 1039. If the ALJ's credibility determination is supported by substantial evidence, the court may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d. 947, 959 (9th Cir. 2002).

The ALJ's decision reflects that he considered all the evidence relating to the proper factors for assessing credibility. As previously noted, the ALJ discounted Nacoste-Harris's allegations regarding the intensity, persistence, and frequency of her vomiting episodes and weight loss. Admin. R. 16. Nacoste-Harris testified that these symptoms had worsened over time and that she continued to experience vomiting episodes several times per week. Admin. R. 16, 49-50. The ALJ found that the evidence showed her nausea and vomiting symptoms had actually improved over time and appeared to be largely controlled with treatment. Admin. R. 16.

At the alleged onset of disability in April 2008, Nacoste-Harris experienced frequently recurring nausea and vomiting, but extensive evaluations revealed no cause and her physicians

thought these symptoms were most likely related to chronic use of narcotic pain medications for headaches. Admin. R. 385, 391, 481, 487, 652, 654, 663-664, 888-889, 950. When she reduced her dosage of narcotics, these episodes improved according to her own report. Admin. R. 487-488. The extensive negative evaluations and normal findings support the ALJ's conclusion that Nacoste-Harris's claims of ongoing debilitating nausea, vomiting and abdominal pain were not supported by the objective medical evidence. Admin. R. 16.

The ALJ also found Nacoste-Harris's allegations regarding ongoing vomiting episodes inconsistent with her treatment history. Admin. R. 16. Nacotse-Harris testified that she experienced vomiting episodes two or three times a week lasting half a day or more. Admin. R. 16, 49-50. She told her primary care doctor that she had to go to the emergency room when such an episode began because her medications would not help once she started vomiting. Admin. R. 484. Medical records show that Nacoste-Harris had emergency room visits for vomiting, nausea, and abdominal pain, but these episodes subsided after she reduced her narcotic dosage in April 2008. Admin. R. 376, 381, 385. Thereafter, she had only two emergency room visits for vomiting spells in 2009 and another one in 2011. Notably, at the time of the later episodes, she admitted she had not been taking her prescribed medications. Admin. R. 519, 527, 621. This history supports an adverse inference as to the credibility of Nacoste-Harris's claim of ongoing debilitating nausea and vomiting episodes several times weekly.

In addition, the gastroenterologists who treated Nacoste-Harris found her nausea and vomiting symptoms reasonably controlled by medications. Admin. R. 16, 734-735. Impairments that are effectively controlled by medications are not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Dr. DeGregorio was unable to offer an opinion

regarding Nacoste-Harris's ability to perform work-related activities. Admin. R. 16, 734-735. The ALJ discounted Nacoste-Harris's claim that her abdominal condition caused persistent excessive weight loss. Although Nacoste-Harris lost weight initially, the record shows she gained 20 pounds after establishing an appropriate medication regimen. Admin. R. 16-17, 953.

The ALJ discounted Nacoste-Harris's assertions regarding the limiting effects of her migraine headaches. Admin. R. 19. Again, the objective medical evidence was unremarkable, with negative diagnostic imaging of her head and brain. Admin. R. 468, 828, 881. She had a neurology evaluation which uncovered no abnormalities. Admin. R. 892-894. Her physicians suspected rebound headaches, again related to overuse of narcotic pain medications. Admin. R. 19, 484, 488. Nacoste-Harris said that only narcotic pain medications relieved her headaches and she discontinued migraine prophylactic medications after brief trials, contrary to medical advice. Admin. R. 484, 487-488, 894. Such failure to comply with a prescribed course of treatment may cast doubt on the veracity of a claimant's assertions of disabling symptoms. *Tonapetyan v. Halter,* 242 F.3d 1144, 1147-48 (9th Cir. 2001).

The ALJ also found Nacoste-Harris's allegations of persistent migraine headaches inconsistent with her treatment history which showed she did not seek treatment for headaches for long periods after June 2008. Admin. R. 19, 22. When a claimant does not require treatment for an allegedly disabling condition, the ALJ may draw an adverse inference as to claims about the severity of the symptoms. *Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001). Nacoste-Harris testified that she continued to have frequent debilitating migraines despite terminating narcotic pain medications, but her treatment history showing that she did not require treatment suggests that her symptoms improved.

7 - OPINION AND ORDER

The ALJ noted that Nacoste-Harris appeared to engage in drug seeking behavior, suggesting that she might be exaggerating her symptoms to obtain narcotics. Admin. R. 19, 645. For example, at her emergency room visits in 2009, Nacoste-Harris appeared to exhibit symptoms only when she thought she was being observed, but appeared to rest comfortably when she thought she was alone. Admin. R. 519, 521-522, 527, 529, 645. Indications of medication misuse due to dependency may support an ALJ's adverse credibility determination. *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).

The ALJ considered Nacoste-Harris's allegations of chronic pain in her neck, back, and hips, as well as weakness in her legs. Admin. R. 17. The treatment history shows that, although Nacoste-Harris alleged disability beginning in early 2008, she did not seek treatment for her orthopedic complaints until August 2011 when she reported to the emergency room saying she had been hit by a car. She had full range of motion of the knees and hips and her biggest complaint was a muscle spasm in the left leg. She had no break in the skin where she said the car hit her and she could ambulate without significant difficulty. X-rays of the left knee and hip were negative for abnormalities and MRI studies of the cervical and lumbar regions of the spine showed only minimal degenerative changes without indications of trauma. Admin. R. 17, 575, 576, 578, 592.

Despite these unremarkable findings, six weeks later Nacoste-Harris sought treatment from an orthopedic specialist for unbearable pain in the neck and lower back, radiating to the extremities. She restricted her range of motion in the neck and shoulders due to pain, but retained full strength in the upper extremities. Dr. Thomas diagnosed a cervical and lumbar strain. Admin. R. 730. At a follow up visit, Nacoste-Harris reported an increase in her pain and her straight leg raise test was positive for pain. Admin. R. 730.

Nacoste-Harris did not have further treatment or evaluation of her pain complaints until she had another MRI study of her cervical spine in August 2012, which again showed mild to moderate degeneration. Admin. R. 883. In October 2012, she underwent evaluation by a microneurosurgical consultant for pain in her neck, right arm, lower back, and legs, and for headaches. Admin. R. 878. After performing a clinical evaluation and reviewing diagnostic imaging of her spine and brain, Dr. Baggenstos said he "did not see any structural abnormality throughout her cervical and lumbar spine, or brain which would explain her current complaints." Admin. R. 17, 881. A follow up EEG examination was also normal. Admin. R. 875-876. In April 2013, Tatsuro Ogisu, M.D., performed a consultative evaluation and concluded that the objective findings, including MRI studies and physical evaluations, did not explain the level of pain or the leg weakness that Nacoste-Harris claimed. Admin. R. 20, 741-743.

The ALJ also considered the medical opinions and lay witness statements, as discussed more fully below, and concluded they did not support Nacoste-Harris's allegation that she could not perform work within the limitations outlined in her RFC assessment. Admin. R. 20-23.

After considering the appropriate factors for evaluating credibility, the ALJ concluded that the evidence in the record did not support the degree of restriction Nacoste-Harris alleged in her subjective statements. Admin. R. 19. The ALJ's findings are based on reasonable inferences drawn from substantial evidence in the record and are sufficiently specific for me to conclude that the ALJ did not arbitrarily reject Nacoste-Harris's subjective statements. The ALJ's reasoning is clear and convincing and the credibility determination will not be disturbed. *Tommasetti*, 533 F.3d at 1039; *Carmickle*, 533 F.3d at 1160.

///

IV. **Medical Opinions**

As noted previously, Dr. Ogisu performed a consultative physical evaluation in April 2013. Nacoste-Harris wore an inflatable neck brace and complained of neck pain radiating to the right shoulder and repeated episodes of collapsing and falling due to unexplained leg weakness. During the evaluation, she exhibited decreased effort and refused parts of the examination due to anticipated pain. Dr. Ogisu said his findings did not explain her back pain or leg weakness and MRI studies did not support the level of pain she claimed. In the absence of objective findings, Dr. Ogisu suggested that myofascial pain syndrome might explain her subjective pain. Admin. R. 741-743. The ALJ credited Dr. Ogisu's report and included myofascial pain syndrome among the impairments that adversely affected Nacoste-Harris's ability to work. Admin. R. 20.

Dr. Ogisu then provided a Medical Source opinion of Nacoste-Harris's residual functional capacity. He opined that Nacoste-Harris could lift and carry 20 pounds occasionally and 10 pounds frequently, consistent with light exertion. He thought she could sit one hour at a time for a total of six hours, stand for 30 minutes at a time for a total of five hours, and walk for 15 minutes at a time for a total of four hours, during a typical work day. He also opined that Nacoste-Harris had limited reaching ability, limited ability to engage in postural activities such as crouching or stooping, and should not work at unprotected heights due to her subjective claims of collapsing due to unexplained leg weakness. Admin. R. 744-749. The limitations in Dr. Ogisu's opinion were largely consistent with the limitations in the ALJ's RFC assessment regarding exertion, reaching, postural activities, and exposure to heights. Admin. R. 18, 23, 744-749. Indeed, the ALJ's RFC limitations appear to be more restrictive than Dr. Ogisu's opinion in some respects. Nonetheless, the ALJ gave Dr. Ogisu's opinion limited weight. Admin. R. 22.

An ALJ may discount an examining physician's opinion that is inconsistent with the opinions of other physicians, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If the opinion is not contradicted by another physician, the ALJ may reject it only for clear and convincing reasons. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002). To the extent the ALJ discounted Dr. Ogisu's opinion, he satisfied both standards.

The ALJ pointed out that Dr. Ogisu found no objective or clinical evidence of an underlying pathology that would account for Nacoste-Harris's complaints and subjective functional limitations. In the absence of any medical evidence, the ALJ reasonably inferred that Dr. Ogisu relied heavily on Nacoste-Harris's subjective statements and presentation in forming his opinion about her limitations. Admin. R. 22. An ALJ may properly discount a medical opinion that is premised primarily on subjective complaints that the ALJ found unreliable. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ explained his evaluation of Dr. Ogisu's opinion with specific, legitimate, clear and convincing reasons based on inferences reasonably drawn from substantial evidence in the record. Accordingly, I find no error.

Claudia Moreno, M.D., was Nacoste-Harris's primary care provider beginning in about November 2011. Between January 2012 and April 2014, Dr. Moreno submitted several letters indicating that Nacoste-Harris could not work. Admin. R. 732, 733, 736, 751, 987. In January 2012, Dr. Moreno said Nacoste-Harris could not work due to nausea and vomiting, signs of cervical impingement, and bereavement after her husband's death. Admin. R. 732. In March 2012, Dr. Moreno said Nacoste-Harris did not have the ability to do her former job as a warehouse worker due

to radicular neck symptoms from cervical nerve root impingement and chronic nausea and vomiting. Dr. Moreno opined that Nacoste-Harris should be approved for long term disability and social security benefits. Admin. R. 733. In October 2012, Dr. Moreno opined that Nacoste-Harris continued to have pain in the neck and upper body, nausea, vomiting, and migraines. She opined that Nacoste-Harris did not have the ability to sit for hours in front of a computer screen. Admin. R. 736. Dr. Moreno reiterated these statements in disability letters submitted in August 2013 and April 2014. Admin. R. 751, 987.

The ALJ gave these disability letters little weight. Admin. R. 21. Dr. Moreno's opinion was contradicted by the functional assessment and opinion of Dr. Ogisu and by the opinions of the reviewing physicians. Admin. R. 110-117, 536-542, 744-749. Accordingly, the ALJ was entitled to discount her opinion by providing specific and legitimate reasons. *Molina v. Astrue*, 674 F.3d at 1111; *Bayliss*, 427 F.3d at 1216.

The ALJ correctly found that Dr. Moreno failed to provide clinical findings from examinations or other objective medical evidence to support her opinion. Admin. R. 21. In addition, Dr. Moreno did not identify specific functional limitations or work-related activities that Nacoste-Harris could not do, other than sitting for hours at a computer. Instead, her letters indicate a blanket conclusion that Nacoste-Harris was unable to work. An ALJ may properly reject a physician's opinion that is conclusory and unsupported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d at 1216; *Meanal v. Apfel*, 172 F.3d 1111, 1117 (9th Cir. 1999). In fact, the ALJ found Dr. Moreno's conclusion inconsistent with objective evidence. For example, Dr. Moreno based her disability opinion, at least partly, on the belief that Nacoste-Harris had a cervical nerve impingement, but the diagnostic imaging showed only mild to moderate degenerative changes in the cervical region of the

spine without significant canal or nerve root involvement. Admin. R. 21. Finally, in the absence of corroborating medical evidence, it appears Dr. Moreno premised her opinion on Nacoste-Harris's subjective statements, which were properly discounted by the ALJ.

The ALJ's determination that Dr. Moreno's disability letters were entitled to diminished weight was based on reasonable inferences drawn from the record as a whole. I find no error.

## V. Lay witness statements

In June 2010, Nacoste-Harris's son Jacques Harris completed a Third Party Function report indicating that Nacoste-Harris had problems with vomiting, nausea, and headaches. Admin. R. 330-337. He submitted a second undated statement in which he said Nacoste-Harris continued to have vomiting episodes two or three times per week, migraine headaches, neck pain with protruding bones in the neck, a problem with the right shoulder, a burning and cramping sensation in the legs, and depression. Admin. R. 357. Nacoste-Harris's friend Alicia Pendergraph submitted a statement dated November 15, 2011, saying that Nacoste-Harris had spinal issues that made her dizzy and shaky. Pendergraph said she saw Nacoste-Harris fall and have difficulty getting back up. Pendergraph said she regularly helped Nacoste-Harris with household chores because Nacoste-Harris's medical conditions made housework difficult. Admin. R. 355-356. The ALJ found these statements credible insofar as Harris and Pendergraph stated what they had observed, but viewed them with caution insofar as they purported to establish that Nacoste-Harris had particular functional limitations. Admin. R. 22.

An ALJ must consider the testimony of a lay witness, but may discount it for reasons germane to the witness. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). The ALJ's reasons must be supported by substantial evidence, but may appear anywhere in the

decision without being tied directly to the evaluation of the lay witness statement. *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir. 2001). When the statements of a lay witness are similar to the claimant's subjective complaints, an ALJ's reasons for discounting the claimant's testimony may be germane to the lay witness. *Valentine,* 574 F.3d at 694.

Here the ALJ considered the lay witness statements in his decision and accepted their observations. Admin. R. 22. The lay witness statements regarding the functional impact of Nacoste-Harris's symptoms are substantially the same as her subjective statements. Accordingly, the ALJ's reasons for finding Nacoste-Harris not fully credible apply equally to the lay witness statements. *Valentine,* 574 F.3d at 694.

The ALJ also commented that he viewed the lay witness statements with caution because Harris and Pendergraph lacked the expertise and motivation to offer an objective or functional assessment and because their affection for Nacoste-Harris appeared to influence their statements. Admin. R. 22. These are improper reasons for discounting the statements of lay witnesses, because they are germane to the particular witness. Such reasoning would exclude statements from all the friends and family of a claimant. Friends and family members and others in a position to observe a claimant's symptoms and daily activities are competent sources of relevant information about the claimant's condition. *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993). Their statements cannot be discounted solely because of their relationship to the claimant.

However, because the ALJ's decision includes a proper basis for discounting the lay witness statements about the functional limitations resulting from Nacoste-Harris's symptoms, independent of the lay witnesses relationships to her, I find the additional improper reasons inconsequential.

*Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d at 1197; *Valentine,* 574 F.3d at 695. The ALJ's evaluation of the lay witness statements did not involve reversible error.

## VI. RFC Assessment

Nacoste-Harris claims the ALJ failed to account for limitations attributable to migraines and myofascial pain syndrome in the RFC assessment. This argument is unpersuasive because the ALJ considered and accounted for all the evidence in the record. The ALJ included in his RFC assessment all the functional limitations he found supported by the record. Because his findings are supported by a reasonable interpretation of the evidence, they must be upheld. *Batson,* 359 F.3d at 1193; *Andrews,* 53 F.3d at 1039-40. Furthermore, an ALJ need not include limitations which he finds unsupported by the record. *Osenbrock v. Apfel,* 240 F.3d 1157, 1163-65 (9th Cir. 2001).

## CONCLUSION

Nacoste-Harris' claims of error cannot be sustained for the foregoing reasons. The Commissioner's decision is AFFIRMED.

DATED this 12th day of Nov., 2015.

Robert E. Jones, Senior Judge
United States District Court

15 - OPINION AND ORDER